We're ready when you are. Good morning, may it please the court. The PTAB instituted and conducted the 676 IPR despite the petition grounds being facially incomplete as to the required algorithmic structure of the computer implemented means plus function claims and facially incomplete as to any explanation of structural equivalent to the prior argument. In doing so, the board argued before the board that this had to be a computer with software. What we argued is that it was a computer implemented invention and what the board took from that is that there is an exception to this court's jurisprudence on algorithmic structure that's limited to software implementations. So you didn't argue before the board or didn't recognize before the board that there could be a hardware implementation, though you now agree that that's the case, right? That's correct. We've always agreed that it's possible, as it is in almost any case, to either have software executing code in a transient fashion or you could hardwire or burn it into the semiconductor. It's still an algorithm. But I don't see that before the board, and correct me if I'm wrong about this, that you argue that if it's hardware, it's got to implement the algorithm and that the prior art didn't show that. Well, Your Honor, that's what we argued in our Pat Noner brief and in the supplemental briefing. We pointed to the cross-examination of Dr. Russ. Dr. Russ stated that the algorithm is expressed in hardware, so it's just circuitry that is doing the algorithm. Where did you argue before the board that the prior art hardware implementation didn't have an algorithm and therefore wasn't a problem? I'm not sure I understand the question, sorry. Well, what I'm concerned about is it seems to me, based on what I understand, and I may be wrong about this, that you didn't argue before the board, one, that this could, there could be a hardware implementation, but that, and that two, if there was, that it had to incorporate the algorithm. Let me give you some What we argued, and this is JA-279, is that the reproducing means is computer-implemented and must be construed to include algorithmic structure. The point of the... So that's not a hardware? Well, any computer-implemented implementation has to have an algorithm to operate. The hardware point came in when the petitioner made its reply and was trying to excuse the fact that it didn't describe an exception, and what we're saying is this is a hardware processor and therefore doesn't need an algorithm. None of that was in the petition. Where did you argue that if there was a hardware implementation, it had to have the algorithm in the hardware? That may have come from JA-480, where we talk about finally, even if hardware processors could somehow be algorithm independent, which they cannot, petitioners did not base their trial ground on a finite state machine or hardware processor. So this is what came in in the petitioner reply. Thus, even accepting petitioner's hardware processor theory, which again was not in its petition, the trial ground is based on Yoshio's controller, which employs an algorithm. That was the trial ground. Well, but all it seems to me is that there's a clause here which they cannot, which is hardly a developed argument, right? Well, this supplemental briefing came after the oral argument. The oral argument pointed out that the petitioner's own evidence, if you look at JA-1286, which is... Was this argued at the oral argument? This was argued at the oral argument. Can you show us where it was argued? At the oral argument? Yeah. So the oral argument transcript starts at JA-497 or thereabout. So at JA-502, we start talking about the algorithm. We're arguing about hardware controllers. The ground doesn't depend on a hardware controller, so we're pointing that out. The ground actually points to a CPU that uses software, and so further down at line 14. So even accepting what their argument, that there's a controller, its general purpose, there's an algorithm in the specification that's one structure, but it's not limited to that structure. There's this other structure, this hardware controller, but if you're consuming a means-plus-function term, you have to cover all these structures. That's it. So further on, JA-503, there's a discussion of the hardware structure being an ASIC. This is what came in in their petitioner reply. Down the bottom, line 21, we never argued that our specification is limited to a general-purpose computer that uses an instruction set. Further on, 504, there's a discussion of hardware processor takes the instruction set and burns it into circuitry. That's always a statutory equivalent we've never argued a hardware controller is not within the scope of these claims. What we've said is an algorithm is required because you can't have a hardware processor. Finite-state machines don't work in the abstract, and then we start walking through their exhibits where they explain that finite-state machines operate in accordance with state machine language, SML. That's how you get the algorithm into the semiconductor. There's no evidence in the record. Even if you did, in fact, raise this as an oral argument, isn't that too late under the board's scheduling order in these cases, which says that you can't raise things for the first time at oral argument? Well, in this case, we were responding to... I'm right about the scheduling order, aren't I? That is correct, but in this case, this hardware processor point was not in the petition. The grounds that were instituted was this was a CPU full stop. Nothing about a hardware processor that doesn't need an algorithm. That's what came in in the petitioner reply when they realized that they were on the wrong side of the law, which they changed in the district court construction, which has also been briefed. So this argument came in. We were not allowed to submit any additional evidence. We were just rebutting something that wasn't even in the trial ground that we saw for the first time. There is no exception in this court's jurisprudence that where you can ignore an algorithm just because you take code, translate it from software into circuitry. You still have to have the algorithm, and that's exactly what the petitioner's evidence makes clear. They say, well, we don't have to describe an algorithm because there's this block diagram, and therefore that's a hardware processor. Well, we wouldn't have any of these 112 decisions on algorithms if you could just point to a picture with a block diagram in it. That's most of those cases. You've only shown a block diagram. There's no description of the algorithm. Well, if you could just throw up your hands and say it's a hardware processor, we'd be done. We wouldn't have to get into all of this. So this came in late. It was not the trial ground. We can't argue against something that we don't see until the petitioner replied. And then separate and apart from that, what we've said is, well, even accepting that this hardware processor theory makes technical sense, the Yoshio reference does not describe a hardware processor. It's a CPU that operates with an instruction set, and if your argument is, well, this is a means plus function claim term. It has an algorithm, one of which is a hardware processor. If your prior art is the version that has the algorithm, then you need to compare the algorithms in any event, and you need to do the equivalency analysis of is that algorithm a structural equivalent to the algorithm that's in this patent, and that wasn't done either. So separate and apart from the fact that this hardware processor issue came in So this is a relatively narrow, straightforward issue. I don't want to belabor the point, but there's no sidestepping the court's algorithmic structure jurisprudence based on a hardware processor theory. Whether you're executing instructions temporarily as code, or you're burning the code as a circuit, you still need the algorithm to meet the function of that claim. There's no evidence in this record that some off-the-shelf hardware controller could be picked up and plugged in that would do this algorithm, and that was the petitioner's burden. It was not in trial grounds. It was not briefed in the trial because this hardware processor theory came in later to explain away the mistake in the law. So the grounds, as well, are deficient. There's no structural equivalence to the algorithm in the specification. There's no dispute in the record that the patent describes an algorithm and links it to this means-plus-function claim. It was simply sidestepped under this hardware processor theory, which I submit is incorrect as a matter of law. Why don't we hear from the other side? Good morning. Good morning. May it please the court. Your Honor, just touching on Judge Dyke's point, I think you're right. Sony did argue in its briefing to the board that the controller was computer-implemented. They said it must be computer-implemented, and that simply is not supported by the intrinsic evidence or the extrinsic evidence. If you look at the 676 specification, consistently throughout the spec, it just refers to a controller. It doesn't disclose any type of computer or processor. I think at this point they agree with that. It seems to me what they're saying is that the petitioner didn't argue invalidity or unpatentability based on the hardware embodiment of this in the original petition, and that they didn't have an opportunity to address that in the patent owner response as a result. I think that's what they're saying. Yeah, and in response to that argument, I would say they were put on notice of what the petitioner, how they were asserting Yoshio met the controller limitation, so they certainly had an opportunity to respond to that argument. In their patent owner response, they expressly stated they were not going to put on rebuttal evidence because they thought the claim construction was overly broad and incorrect. They certainly had an opportunity at that point if they chose to. They could have put on some rebuttal evidence. They could have cross-examined Dr. Russ. They actually took the step of withdrawing their own expert testimony. So that was a decision they made, but they certainly were put on notice that Yoshio, how it was mapped to the claims under Petitioner's theory. Did they map? Was there an argument in the petition that Yoshio showed a hardware implementation of this? No, the Yoshio controller, and I believe Eris' counsel stated this during the oral argument, that the Yoshio controller is a computer-implemented controller. And it was mapped because it has a processor or CPU or something. So it is computer-implemented, but under the claim construction, as long as you have a controller and the claims require a controller, Yoshio discloses a controller. It performs, and the board explained, and Dr. Russ explained how it performs the recited functions, and that's sufficient. And if Sony wanted to make an argument that they thought it didn't meet the claims literally and there should have been some type of equivalency analysis, they could have raised that argument during the proceedings, but they chose not to. And so in our brief, we've argued that they waived the right to do so before this court. So unless you have any other questions about some of the issues that were briefed, I'm happy to answer them if you have questions about anything else. Well, what the board said in its decision was that computer implementation wasn't required, right? Correct. And that a hardware implementation would count. Did they find the hardware implementation in the prior art? No. So they found that the claims were not limited to a computer-implemented controller. It could be either hardware or computer-implemented, but they found based on the intrinsic evidence, based on the spec, how it's depicted in Figure 7 as a hardware element along with other hardware elements. And based on Dr. Russ's expert testimony, he pointed out that these claims were filed, had priority back to 1991. And at that time, it was well known that controllers could be implemented in hardware. Dr. Russ gave examples of like a dishwasher, a washing machine, as a hardware controller, would have a hardware controller and a traffic light. So it was well known. And so Dr. Russ thought, even though, or concluded that, when it's still in the art, looking at the intrinsic evidence, would find that the hardware controller, the controller in the 676 spec, was more likely a hardware controller, but that it could be implemented as a hardware controller or a computer-implemented controller. So, and they found the computer implementation in Yoshio. Correct. And they found that met the controller limitation, because it was a controller and it performed the recited functions, and the claims weren't limited to that specific algorithm. And that was sufficient. Well, just to be clear then, the position of the office is that for computer-implemented procedures, it's irrelevant whether the algorithm is or is not disclosed or suggested in the prior art. If the, no, I think if the claims, if the spec and the claims were limited to a computer-implemented controller, then under this court's precedent, you'd have to include the algorithm recited in the spec. But here, since there was no, there's no requirement that, or the claims were not limited to a computer-implemented controller, that could be performed on a hardware controller, and it was more likely to be a hardware controller, you weren't required to perform that specific algorithm. Just performing the recited functions would be sufficient to meet that claim limitation, so long as you had a controller of some type in the prior art. So for a means plus function, again, you're saying it's irrelevant whether the means contains an algorithm. In order for the function to be read on the prior art. In this case, since it was a hardware controller, the algorithm was not part of the claim construction. I want to understand the difference between this case and whatever generalization, whatever general practice is being imposed on computer-implemented means, claims to computer-implemented means. Yeah, so if it was solely a computer-implemented means that was disclosed like a general-purpose computer or processor, then the spec would have to disclose some type of algorithmic structure. Otherwise, if it didn't, your claims would be indefinite. So Yoshio didn't disclose the algorithm. There is no finding. The court actually didn't address the algorithm, because it wasn't part of the claim construction, and so there's no fact-finding on whether Yoshio disclosed that algorithm. So the theory is that Yoshio did disclose a controller and a synthesizer, and that was sufficient? Yes, because the controller and the synthesizer performed the recited function of reproducing the audio according to the designated channel. The board actually went through, and Dr. Russ explained how in Yoshio, spanning columns 6 and 7, it had a controller, 25, which would look to determine the designated channel, which is basically which language should you reproduce the audio in. It would send that to the decoder. The decoder would then create a digital file, audio file. It would send it to the converter, which would then convert the digital file into an audio file. So together, you had the controller plus those two other components. We met the synthesizer limitation, and together they performed the recited function of reproducing the audio according to the designated channel. That met the claim limitation. And again, Sony didn't provide any rebuttal evidence to that. They just kind of argued solely that the claim construction was incorrect. Thank you. Thank you. Just a couple points on Yoshio. There's no dispute that it uses software. What we've said in the briefing is that it doesn't describe any algorithm. It just states it does the function. It's not our burden to rebut something that's not in the record. It's the petitioner's burden to explain if that is your ground and that uses an algorithm, then how is it equivalent to a different structure, if you accept the petitioner's argument, of a hardware processor that can use any algorithm? So what's being argued here, in essence, by the PTO, is that as long as you have a discrete box and a figure, you own every way of implementing a function. That that can't possibly be correct. I don't think that's what they're arguing. I think they're arguing that you didn't, before the oral argument before the board, present this theory that in a hardware implementation, you still had to have an algorithm. Well, Your Honor, I would submit that it's not our duty to argue against ourselves. The ground was the claim requires a CPU, period. Nothing about a specific hardware processor, nothing about a specific hardware processor that's already preloaded with circuitry to perform the function. That was their burden. We can't imagine what they're going to argue when we point out that their claim construction was fatally flawed. It's clear in the specification by using words such as executing, processing, the flow chart, that there's an algorithm there. It's their duty to compare that structure to the prior art. If you want to argue that the specification has structures A and B, and you rely on B, and yet your ground points to A, there still needs to be an equivalency analysis there. Essentially, the argument here is a computer has software, period. A computer can't be a specific semiconductor that's already had the circuitry burned into it. That flips this court's jurisprudence on its head. What makes that processor a special processor is the executing algorithm. What difference does it make whether it's operating in software, or you burn it into the code? Finally, all of the petitioner's evidence on point makes clear that these processors are burned algorithms into the semiconductor. The algorithm doesn't go away just because it's a hardware processor. That's in the petitioner's own evidence. There's no way to sidestep the need for an algorithm. As I said, every case that's been before this court where there's been an indefiniteness issue or lack of written description support for lack of an algorithm, is usually there's just a block diagram with a processor box. You didn't describe an algorithm. Why doesn't everybody just argue, that's a hardware processor and I don't need it? Because it doesn't make any technical sense. You can't get computers, and a hardware processor is a computer, to operate without an algorithm. So for that reason, these grounds should be reversed and these claims found not patentable. Thank you. We thank both sides and the cases submitted, and I guess everybody can stay where they are. And the next cases...